313 F.Supp. 1354 (1969)
George H. EVANS, for himself and all others similarly situated, Plaintiff,
v.
LOCAL UNION 2127, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, and I-T-E Circuit Breakers Company, Walker Division Defendants.
Civ. A. No. 12861.
United States District Court, N. D. Georgia, Atlanta Division.
December 17, 1969.
*1355 *1356 *1357 Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, Vilma Martinez Singer, New York City, for plaintiff.
Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for I-T-E Imperial Corporation.
Robert L. Mitchell, Atlanta, Ga., for Local Union 2127.
SIDNEY O. SMITH, Jr., Chief Judge.
This is a class action in which plaintiff seeks a declaratory judgment, in junctive relief and damages for alleged racial discrimination in employment practices, and alleged breaches of duty by the defendant union in negotiating collective bargaining agreements which plaintiff asserts are unlawfully discriminatory. Jurisdiction is invoked pursuant to 28 U.S.C.A. § 2201 et seq., 28 U.S. C.A. § 1343, 42 U.S.C.A. § 1981, and 42 U.S.C.A. § 2000e et seq. Defendants have made four motions, which will be considered in the order filed.

CORPORATION'S MOTION TO STRIKE
Defendant I-T-E Imperial Corporation has moved to strike portions of Complaint Paragraph XIII and Complaint Paragraph XV which describe the filing of complaints with the Equal Employment Opportunity Commission, the Commission's notification of the defendant Company that a complaint had been filed, and the Commission's probable cause letter to the plaintiff. Defendant objects that the allegations are immaterial, impertinent and unduly prejudicial.
In King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968), plaintiffs attached a copy of the EEOC decision to the complaint. It was stricken on the ground that the provisions of 42 U.S.C.A. § 2000e-5(a) prohibit the publication or use as evidence of anything said or done during the Commission's attempts at reconciliation. But the Court held that the language referred not to the EEOC investigation or finding of reasonable cause, but only to the endeavors to eliminate unlawful practices by conference, conciliation or persuasion. Id. at 948. In the instant case, plaintiff has merely alleged that certain Title VII procedures have been followed. Furthermore, in Moreman v. Georgia Power Co., 310 F.Supp. 327 (N.D.Ga. March 13, 1969) (Order on Georgia Power Co.'s Motions), recitation of the procedural steps plaintiff took before the EEOC was held not to be unduly prejudicial. Accordingly, defendant's motion to strike is denied.
Defendant I-T-E Imperial Corporation has also moved to strike that part of Complaint Paragraph XIII which alleges that at a Company meeting after the Company had been notified that plaintiff filed a complaint with the EEOC, plaintiff and other black employees were admonished and threatened for violating a nonexistent shop rule about using segregated plant restrooms. The Court agrees with the defendant that since plaintiff does not seek relief as to such working conditions, the allegation does not seem directly related to the relief presently sought. However, as plaintiff argues, the allegation does relate to other unlawful Company acts, such as reprisals for filing an unlawful discrimination charge, unlawful pursuant to 42 U.S.C.A. § 2000e-3, or maintenance of unlawfully discriminatory working conditions. It does not therefore seem provident to remove this allegation this early in the case. Accordingly, defendant's motion to strike is denied. A motion to strike should be denied where there is a reasonable possibility the allegation made will be an issue. 2A Moore's Federal Practice ¶ 12.21 (2d Ed. 1969).

*1358 UNION'S MOTIONS TO DISMISS AND STRIKE
Defendant Local 2127 has filed a motion to dismiss based on four arguments.
(1) The entire complaint should be dismissed. As a whole it fails to state a claim upon which relief can be granted against the Union, because Count I does not allege that the Union engaged in discrimination, and because the complaint does not allege that charges were filed against and served upon the Union in compliance with 42 U.S. C.A. § 2000e-5.
To the contrary, Count I clearly charges that the Union negotiated the 1966 and 1968 collective bargaining agreements containing the allegedly discriminatory seniority provisions. Compaint Paragraphs VIII and IX. And it appears from the decision of the EEOC that charges were served upon the Union on February 2, 1968. Plaintiff's Answers to Defendant I-T-E Imperial Corporation's First Interrogatories, Exhibit B. Accordingly, defendant's motion cannot be granted on these grounds.
(2) The entire complaint should be dismissed because it shows on its face that plaintiff failed to exhaust grievance and arbitration procedures available under the collective bargaining agreement. This contention has been answered by the Court in King v. Georgia Power Co., 295 F.Supp. 943 (N.D. Ga.1968). There, this Court held that since an action under Title VII of the Civil Rights Act of 1964 invokes statutory rather than contractual rights, plaintiffs need only follow the procedures set forth under the statute. Id. at 949. Since this suit also invokes statutory rights, the exhaustion doctrine is similarly inapplicable. Accordingly, the Union's motion is unsupported by these premises.
(3) The whole complaint should be dismissed because in substance it is an action for injunction of a labor dispute, and the Norris-LaGuardia Act, 29 U.S. C.A. § 101 et seq. bars federal courts from granting such relief, except in certain circumstances not present here. A literal reading of 29 U.S.C.A. § 113 (c) probably brings the instant controversy into the Act's definition of "labor dispute." See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 458, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). However, civil actions under Title VII of the 1964 Civil Rights Act are specifically exempted from the anti-injunction provisions of the Norris-LaGuardia Act. 42 U.S.C.A. § 2000e-5(h). And even before the enactment of Title VII, the United States Supreme Court had held that the Norris-LaGuardia Act does not deprive federal courts of jurisdiction to compel compliance with positive mandates of the Railway Labor Act enacted for the benefit and protection, within a particular field, of the same groups whose rights are preserved by the Norris-LaGuardia Act. Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).
In Syres v. Oil Workers International Union, Local No. 23, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955), where the Union's alleged duty was governed by the National Labor Relations Act, the Court allowed an injunction prohibiting enforcement of a racially discriminatory collective bargaining agreement, because the decisions in Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949) and Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) were not predicated on any peculiarity of the anti-discrimination provisions of the Railway Labor Act. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).
The reasoning of Lincoln Mills, Graham and Virginian is persuasive in this action to block racial discrimination. Breach of the duty of fair representation by racial discriminaion is not the kind of act which had prompted *1359 courts to abuse the injunctive power. Injunction of such racial discrimination is not part and parcel of the abuses against which the Norris-LaGuardia Act was aimed. Cf. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The Norris-LaGuardia Act does not preclude injunctive relief from racial discrimination for the very class of people the Act seeks to benefit and protect. Cf. Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949). It follows that this argument cannot support defendant's motion.
(4) Plaintiff's "Second Cause of Action" should be dismissed because jurisdiction to determine whether the Union breached its duty of fair representation is vested exclusively in the National Labor Relations Board, according to the pre-emption doctrine expressed in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). This contention has been vitiated by reference to Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). That case held that pre-emption doctrine does not apply to oust federal courts of jurisdiction over suits involving an alleged breach of the duty of fair representation. Thus the rationale affords no basis for granting defendant's motion.
(5) Plaintiff's Second Cause of Action should be dismissed because Title VII of the Civil Rights Act of 1964 preempts the field of racial discrimination in employment, providing remedies intended to be exclusive. This aspect of the Union's motion constitutes an attack on the complaint insofar as it rests upon 42 U.S.C.A. § 1981.
Undoubtedly, a motion to dismiss a complaint alleging racial discrimination in employment and resting wholly on 42 U.S.C.A. § 1981 would have to be granted, where, as here, it did not appear that the defendant's acts or omissions were under color of state law. Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232, 1243 (N.D.Ga.1969). But the Court has already held above that the claim against the Union is properly founded upon Title VII. Accordingly, the Union's motion to dismiss Plaintiff's Second Cause of Action cannot be granted.
The defendant Union's motion to strike is addressed to various aspects of the relief plaintiff has prayed. First, the Union moves for an order striking all references in Plaintiff's Second Cause of Action to injunctive relief, on the grounds that the Court is barred from awarding such relief by the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. This argument has already been rejected supra. Accordingly, this aspect of the Union's motion is denied.
The other aspects of the Union's motion seek an order striking plaintiff's statement of (Paragraph XIX) and prayer for (F) general damages, and his statement of (Paragraph xx) and prayer for (G) punitive damages. Plaintiff's brief appears to concede that 42 U.S.C.A. 1981 affords the only basis for including such statements and prayers in the complaint. Since the Court has held, above, that jurisdiction over this action may not be predicated on that statute, defendant's motion to strike these paragraphs and prayers must be granted. See 2A Moore's Federal Practice ¶ 12.21 (2d Ed. 1969).

OBJECTIONS TO INTERROGATORIES
Defendant I-T-E Imperial Corporation objects to the introductory statement in Plaintiffs' First Interrogatories to Defendant, calling for defendant to supply, with the answer to each interrogatory, the source of the information comprising the answer  whether documentary or human  and a list of all other documents containing, or persons having, information pertaining to the subject of the interrogatory. Defendant objects that the requirement is unduly burdensome and oppressive.
*1360 There is no question but that a party may by interrogatory inquire into the existence or description of documents or other tangible items. 4 Moore's Federal Practice ¶ 33.22 (2d Ed. 1969). Similarly a party may discover the identity and location of persons or witnesses having knowledge of relevant facts. 4 Moore's Federal Practice ¶ 26.19[1] (2d Ed. 1969). However, to require a corporate opponent to both answer the interrogatory and identify the source of its answer and any other source of information relating to the subject of the interrogatory, is, in the context of Title VII civil actions, unduly burdensome. See 4 Moore's Federal Practice ¶ 33.20 (2d Ed. 1969). Plaintiffs may not need each and every such document or person identified. Moreover, it has been the Court's experience that when Title VII plaintiffs decide in what areas they need documents and witnesses, consultation with a defendant and cooperation encouraged by the Court often result in defendant's voluntarily making its records available for inspection and copying by plaintiff. This course saves the time and energy of plaintiff, defendant and the Court.
Accordingly, defendant's objection to the introductory paragraph of Plaintiffs' First Interrogatories to I-T-E, is sustained.
I-T-E Imperial Corporation objects to interrogatories number 9, 9(e), 10, 11, 15, 16, 17(d) (1), 17(e) (1), 18, 19, 20, 21, 22, 23, 25(a), (g) and (h), 33, 37, 38, 61 and 62 on the grounds that they all call for information which is completely irrelevant and immaterial to Plaintiffs' First Cause of Action against the Corporation, and they are not reasonably calculated to lead to the discovery of admissible evidence. Specifically the defendant Corporation objects that all the listed interrogatories seek information and documents concerning events which occurred before July 2, 1965, the effective date of Title VII of the Civil Rights Act of 1964.
In Georgia Power Co. v. EEOC, C.A. 11858, 295 F.Supp. 950, the Court was faced with an analogous situation. There, the employer objected to a demand made by the Commission pursuant to 42 U.S.C.A. § 2000e-9(a), arguing that the demand to produce should be limited to documents and information relevant to events occurring and practices engaged in after the effective date of the act. The Court there held that although what the company did ten, twenty or thirty years before 1964 could not show violation of the Act, the effective date of Title VII was not any sort of cutoff date, prior to which any actions of the company are irrelevant to a Title VII action. The Court therefore allowed investigation by the EEOC into the company's actions and practices up to five years before the effective date of Title VII, recognizing that although any date so chosen was arbitrary, the time period seemed reasonable. Georgia Power Co. v. EEOC, C.A. 11858, 295 F.Supp. 950 (N.D.Ga. August 9, 1968).
The same rationale governs the instant case. The Corporation's actions or practices before July 2, 1965, are not automatically irrelevant to proving a violation of the Civil Rights Act. While the Court agrees that Title VII is meant to be essentially prospective, this position does not foreclose inquiry into past actions or practices which may shed light on present deeds or policies which do violate the Act. Accordingly, the Corporation's objections to these interrogatories is overruled.
The defendant corporation also objects to interrogatory number 10 on the grounds that the information called for is made privileged by a regulation of the Office of Federal Contract Compliance, of the United States Department of Labor:
Reports filed pursuant to this section shall be used only in connection with the administration of the order, the Civil Rights Act of 1964, or in the furtherance of the purposes of the order and said Act. 41 C.F.R. § 60-1.7 (c)
*1361 The Court cannot subscribe to the narrow reading proffered by defendant, that the reports may be used only in connection with the administration of the Civil Rights Act, i. e., during the EEOC investigation. That construction is especially strained in view of the last clause of the regulation. Accordingly, defendant's objection to interrogatory number 10 on this ground is also overruled.
Defendant's objection to interrogatory number 13 is that it inquires about job classifications or categories for clerical and supervisory employees, as well as those for production employees. The argument is that under the tests set forth in Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968), and considering the allegations of the complaint, plaintiffs have no standing, in this class action, to represent any black employees other than production workers. It follows, according to I-T-E, that plaintiffs have no right to initiate discovery as to job categories or classifications other than those for production workers.
Where the complaint in a Title VII civil action contains an "across the board" attack on alleged racial discrimination by an employer, the specific rights of particular individuals are no longer in controversy, and in an effort to remove the threat of racial discrimination hanging over an entire racial class, an individual plaintiff has standing to represent all members of his race who are employees or who have been wrongfully discharged because of racial discrimination. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969).
However, in the instant case, no such "across the board" attack was made.[1] Plaintiffs joined the Corporation and their Union as defendants, attacking the collective bargaining agreement between the two, and the Corporation's seniority system. It would therefore appear that only personnel who are or were subject to the collective bargaining agreement and members of the Union can be considered members of the class. It does not appear that clerical or supervisory personnel are members of the class. Discovery as to their job categories or classifications is thus irrelevant to the instant action. Accordingly, the Corporation's objection to interrogatory number 13 is sustained.
The Corporation objects that plaintiff's request in interrogatory number 25(i) that defendant attach any records relevant to plaintiff Evans' performance ratings is an attempt to avoid the "good cause" requirements of Federal Rules of Civil Procedure 34. The Court agrees that a party may not require his opponent to provide copies or summaries of documents under Rule 33. 4 Moore's Federal Practice ¶ 33.22, 2383 (2d Ed. 1969). The Corporation's objection to this interrogatory is sustained.
Interrogatory number 40 asks whether the defendant corporation has ever hired a white person with less experience than the men he is to supervise, and placed the new white employee in charge of black employees "of long tenure and experience." The defendant objects that the question is so overly broad and vague that it cannot be answered. 4 Moore's Federal Practice ¶ 33.08[1], 2292-2293 (2d Ed. 1969). The interrogatory requires the defendant to draw too many opinions about too many employees to require answering at this point in time. More narrowly drawn, so as to apply, for instance, to one white supervisor over several black employees, it would be unobjectionable. But as presently phrased, the question calls for a great number of opinions on the part of I-T-E, and does not appear to serve a substantial purpose in narrowing issues. See 4 Moore's Federal Practice ¶ 33.17, 2354-2355 (2d Ed. 1969).
The Court finds the opinion called for by interrogatory number 56 *1362 unobjectionable. One purpose of Rule 33 is to allow one party to obtain admissions from another, and thereby save time in preparation and at trial. Schwartz v. Howard Hosiery Co., 27 F.Supp. 443 (E.D.Pa.1939), cited in 4 Moore's Federal Practice ¶ 33.17, 2351 (2d Ed. 1969). It is Professor Moore's view that interrogatories calling for opinions are unobjectionable if the answers will be of substantial value, for instance in narrowing evidence. Id. at 2355. The answer to this interrogatory will appreciably narrow the issues and conserve the time of both parties, by obviating the necessity of proving a readily ascertainable statistical fact: i. e., whether black employees held the lower paying jobs in the corporation. Accordingly, I-T-E's objection to interrogatory number 56 is overruled.

DEFENDANTS' MOTION TO DISMISS
Both I-T-E Imperial Corporation and the Union move to dismiss Plaintiff's First Cause of Action for lack of jurisdiction. They assert that the complaint premises jurisdiction to award injunctive relief and damages, including back pay, on 42 U.S.C.A. § 1981 and on Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. Jurisdiction cannot, it is argued, be based on 42 U.S.C.A. § 1981, because it is not alleged or shown that either defendant acted or omitted to act under color of state law. The Court agrees. Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232 (N.D.Ga.1969); Colbert v. H-K Corp., 295 F.Supp. 1091 (N.D.Ga.1968).
Defendants also assert that since all jurisdictional prerequisites have not been met, neither can jurisdiction be founded on Title VII. Specifically, they state that having investigated all the charges filed by plaintiff, the EEOC found reasonable cause existed to believe that the defendants were committing an unlawful employment practice by maintaining a racially discriminatory seniority system, but reasonable cause did not exist to believe that the defendants had otherwise violated the provisions of Title VII.
Their first argument is that an EEOC finding that reasonable cause exists is a jurisdictional prerequisite to a civil action brought pursuant to 42 U.S.C.A. § 2000e-5(e). Green v. McDonnell-Douglas Corp., 299 F.Supp. 1100 (E.D. Mo.1969); Fekete v. United States Steel Corp., 300 F.Supp. 22 (W.D.Pa.1969); Davis v. Boeing Co., 2 FEP Cases 62 (W.D.Wash.1969). The conclusion proffered is that the Court does not have jurisdiction over charges regarding which the EEOC made negative findings. This argument cannot be sustained in light of judicial precedent.
In this circuit, the only jurisdictional prerequisites to a Title VII civil action are the filing of a timely charge with the EEOC and the filing of suit within thirty days after receipt of statutory notice from the Commission: actual conciliation efforts by the EEOC are not a jurisdictional prerequisite to the private civil action. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Dent v. St. Louis-San Francisco R. Co., 406 F.2d 399 (5th Cir. 1969). The Court of Appeals has stated specifically that "The action or inaction of the EEOC cannot affect the grievant's substantive rights under the statute." Miller v. International Paper Co., 408 F.2d 283, 291 (5th Cir. 1969). The quoted language is as applicable to the EEOC's findings of reasonable cause as it is to the Commission's conciliation efforts.
Moreover, defendants' first argument cannot be sustained in light of the structure and purposes of 42 U.S. C.A. § 2000e-5(c). Judicial proceedings under Title VII constitute a trial de novo, and are not an appeal from EEOC action. King v. Georgia Power Co., 295 F. Supp. 943, 948 (N.D.Ga.1968). They are, furthermore, the only manner in which Title VII can be enforced: the EEOC has no enforcement authority. Miller v. International Paper Co., 408 F.2d 283, 289 n. 29 (5th Cir. 1969). *1363 To allow a negative Commission finding to preclude access to federal court is to emasculate Title VII by making a stumbling block of procedures presumably designed, in part, to accomplish the statutory purpose of equal employment opportunity. Cf. Miller v. International Paper Co., 408 F.2d 283, 290 (5th Cir. 1969). The Court has been shown no reason for thus crippling the rights of aggrieved individuals. Accordingly, a finding that reasonable cause exists to believe that charges filed with the EEOC are true is not a jurisdictional prerequisite to a civil action based on those charges brought pursuant to 42 U.S.C.A. § 2000e-5(e).
Defendants secondly argue that since the charges filed with the EEOC did not attack the seniority system, the issue cannot be raised in Court, since it was not raised before the Commission. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).
This argument rests on too broad a reading of that case. The Court of Appeals was concerned with the issue whether a class action under Title VII could include as plaintiffs individuals who had not filed charges with the EEOC. In answering affirmatively, and holding that the District Court had unduly restricted the class, the Court of Appeals stated that the plaintiff as class representative could raise only those issues which he had standing to raise and which he had raised before the EEOC. Id. at 499. The Court of Appeals was apparently concerned with preventing such a plaintiff from raising for the first time in court, issues of concern to represented class members, but which the EEOC had not had an opportunity to resolve by informal conference and conciliation.
This Court has already indicated its belief that Oatis cannot be read to restrict the scope of judicial jurisdiction as severely as defendant suggests. In Colbert v. H-K Corp., 295 F.Supp. 1091 (N.D.Ga.1968), the Court held that the issues raised by a plaintiff representing a class in a Title VII civil action must be only those he has standing to raise, and "those issues related to the charge filed with the EEOC." Id. at 1093. The Court then went on to hold plaintiff, who was refused employment allegedly solely because of her race, could not represent the twenty black employees of defendant who were allegedly discriminated against in terms of job classification and promotion. See also King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968).
In the instant case, the charges filed with the EEOC on August 1, 1967, allege that Negroes are not afforded the same promotions or opportunities as are whites. Plaintiff's Answers to Defendant I-T-E Imperial Corporation's First Interrogatories, Exhibit A. This assertion is certainly sufficient to allow the EEOC to investigate the seniority system applicable to Evans, the "aggrieved party," in view of the crucial role seniority plays in transfer or promotion to more desirable or rewarding jobs. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).
On November 15, 1968, the Commission issued its decision, in which it found reasonable cause to believe that the defendants were violating Title VII by maintaining a racially discriminatory seniority system. Between that date and June 4, 1969, when the EEOC issued its "suit letter," it is presumed that the Commission was attempting by conference and conciliation, to bring the seniority system into the EEOC's definition of compliance with Title VII.
Thus it appears that plaintiff filed charges against both the Corporation and the Union relating to their seniority system, and that the EEOC had an opportunity to attempt to resolve the controversy between plaintiff and the defendants by informal conference and conciliation, as is intended by Title VII. Stebbins v. Nationwide Mutual Ins. Co., 382 F.2d 267 (4th Cir. 1967), cert. den. 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d *1364 880 (1968). Since the Commission was unable to resolve that controversy to plaintiff's satisfaction, he has filed this action, over which the Court does have jurisdiction, in accordance with the above. It follows that defendants' motion to dismiss must be, and hereby is, denied.
It is so ordered.
NOTES
[1] The Court does not consider Complaint Paragraph VII as an "across the board attack" described in Johnson v. Georgia Highway Express, Inc., supra.